# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **ROBERT E. ARNDT,**<br><br>         Plaintiff,<br><br>vs.<br><br>**FAY SERVICING, LLC,**<br><br>         Defendant. | Civil Action No. 1:16-cv-04029-GLR |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Fay Servicing, LLC ("Fay"), by and through its undersigned counsel, hereby submits the following memorandum in support of its Motion to Dismiss Plaintiff Robert Arndt's Complaint.

## Introduction

Mr. Arndt claims that Fay has violated the Fair Debt Collections Practices Act ("FDCPA") by virtue of a letter that its Compliance Department sent to his attorney, in response to a request for information submitted by his attorney. The text of the letter makes plain that it was sent as a routine ministerial response to an attorney's inquiry, and was not designed to make payment more likely. It therefore was not made in connection with the collection of a debt and Mr. Arndt cannot state a claim for relief under the FDCPA. The only other correspondence to Mr. Arndt from Fay referencing any loan balance amount was sent in July 2015, outside the applicable limitations period. Because Mr. Arndt has not pled any actionable collection efforts by Fay, his Complaint should be dismissed. Alternatively, Mr. Arndt's allegations that any corporate advance fees or "inspection fees" were improper are speculative and conclusory and do not satisfy *Iqbal*'s mandate that actionable allegations must show more than a "mere possibility

1

of misconduct" or actions "that are merely consistent with a defendant's liability." This Court, should therefore dismiss the Complaint, with prejudice.

## Factual Background[1]

Arndt purchased residential real property at 3426 Sykesville, Westminster, Maryland, 21167 (the "Property"), on October 25, 2005. Compl. ¶ 6. In connection with a loan to complete this purchase, he executed a Note, secured by a Deed of Trust on the Property. *Id.* & Exhibit A hereto.[2] Arndt defaulted on his loan. Compl. ¶ 7. Effective June 25, 2015, sometime after this default, the servicing of this loan was transferred from Ocwen Loan Servicing, LLC ("Ocwen") to Fay. *Id.* & Compl. Ex. B. (Doc. 1-2). On June 25, 2015—*i.e.*, a date on which the service transfer was already effective— Ocwen entered several notations in its transaction history for the account described as "Expense Waive." Compl. Ex. D (Doc. 1-4). On July 1, 2015, in connection with the setup of Arndt's loan in its own systems, Fay noted a "corporate advance adjustment" of $4,060.22 and another of $742.76. Compl. Ex. E (Doc. 1-5).

Between August 28, 2016 and January 21, 2016, Fay charged six fees to the account labeled as "PROP INSP FEES" – each in the amount of either $11.50 or $12.50. Compl. Ex. F (Doc. 1-6).[3] On March 12, 2016, <u>in response to a request for information by Plaintiff's attorney</u>, Fay provided a Payoff Statement. Compl. ¶ 12; Compl. Ex. G[4] (Doc. 7). The letter enclosing the statement makes clear that it was provided by Fay's compliance department in response to a request from counsel. *Id.*

---

[1] Except where contradicted by the exhibits to the Complaint, Fay assumes the truth of Plaintiff's allegations for purposes of this motion only.
[2] The Deed of Trust is referenced in Mr. Arndt's Complaint, and the Court may therefore consider it without converting this motion into one for summary judgment. *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).
[3] While Plaintiff alleges that his counsel "has reason to believe" that these fees "are included in the corporate advance adjustment reflected in '**Exhibit E**,'" Compl. ¶ 11 (emphasis in original), this belief is belied by the exhibits themselves. Exhibit E's corporate advance adjustment is dated July 1, 2015. *See id.* (Doc. 1-5). The fees listed in Exhibit F were imposed no earlier than August 2015--*after* the July 1, 2015 adjustment. *Id.* (Doc. 1-6).
[4] This Exhibit was mistakenly omitted from the filing and was therefore filed as Doc. 7.

The payoff statement itself notes that any figures therein are "subject to final verification by the Noteholder." *Id.* Plaintiff contends that any "inspection fees" are in violation of Maryland Commercial Law 12-121 and thereby several provisions of the FDCPA, including subsections of 15 U.S.C. § 1692e and § 1692f. Compl. ¶ 13. Plaintiff also alleges that "the unsupported corporate advancements" violate the same sections of the FDCPA. *Id.* ¶ 14. Lastly, Plaintiff summarily asserts that Fay's actions were "harassing" and that he was damaged by "emotional distress amongst other negative emotions." Compl. ¶¶ 15-16.

## Standard of Review

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). When deciding a Rule 12(b)(6) motion, "a court accepts all well-pled facts as true and construes [those] facts in the light most favorable to the plaintiff." *Nemet Chevrolet Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 255 (4th Cir. 2009). But "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Id.* Similarly, "unwarranted inferences, unreasonable conclusions, or arguments" do not constitute well-pled facts. *Nemet*, 591 F.3d at 254 (internal quotation marks omitted); *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 326 (4th Cir. 2001) ("[A] few conclusory legal terms do[] not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion.").

It is not enough to allege facts that show a "mere possibility of misconduct" or "that are merely consistent with a defendant's liability." *Iqbal*, 556 U.S. at 678-79 (internal quotation

3

marks omitted). The Federal Rules of Civil Procedure, quite simply, require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Here, Plaintiff's allegations are speculative and do not show more than a "mere possibility of misconduct." The Complaint fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), and should be dismissed with prejudice.

## **Argument**

To state a claim under the FDCPA, a plaintiff must allege that the defendant is a debt collector, that the plaintiff is the object of collection activity arising from consumer debt, and that in connection with that debt, the defendant "engaged in debt collection activity prohibited by the FDCPA." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012). As such, a threshold element of such a claim is that the prohibited action actually occurred "*in connection with* the collection of any debt" or in an "*attempt* to collect any debt." *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 124 (4th Cir. 2014) (reciting standards under 15 U.S.C. § 1692e and § 1692f).

Plaintiff alleges violations of 15 U.S.C. §§ 1692e, e(2), e(1), 1692f, and f(1). Section 1692e provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." This includes "[t]he false representation of-- (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2). Section 1692e(10) provides a catchall quite similar to the introductory portion of the Section, prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.*

Section 1692f, meanwhile, states: "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Such means are defined as including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

## I. A Payoff Statement Provided in Response to a Request from a Debtor's Attorney Is Not in Connection with Collection Nor an Attempt at Collection.

Arndt alleges just two communications from Fay. The first, dated July 6, 2015, cannot form the basis for any FDCPA violation because it was sent more than one year from the date Arndt's Complaint was filed. *See* 15 U.S.C § 1692k(d). The second, dated February 2, 2016, is addressed to Mr. Arndt's attorney, not Mr. Arndt, and is sent by Fay's Compliance Department, not customer service or collections. Ex. G (Doc. 7). It states:

> Pursuant to your Request for Information regarding the above-referenced account, we have enclosed the following documentation and/or information:
>
> Payoff Statement good through February 27, 2016.
>
> We hope this satisfies your request. If you need additional information, please submit your updated qualified written request….[5]

As a matter of law, this correspondence is not "in connection with the collection of a debt" nor an "attempt to collect a debt." *Cf.* 15 U.S.C. §§ 1692e, f.

As an initial matter, this correspondence was directed to Mr. Arndt's attorney, in response to a request for information from the attorney – not Mr. Arndt. The FDCPA also does not apply to every communication between a debt collector and a debtor. *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). In *Grden*, the Sixth Circuit found to be

---

[5] Among other provisions, RESPA requires a mortgage servicer to respond to a borrower's "qualified written request." *See* 12 U.S.C. § 2605(e)(1)(A), (B).

5

decisive that the debt collector "made the balance statements only after [plaintiff] called and asked for them.  The statements were merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely."  *Id.*; *see also* at 389 ("The important letter dated January 4 does not 'demand' any payment whatsoever, but merely informs the [plaintiff] about 'the current status' of their account," and therefore did not "fall under the ambit" of the FDCPA.)  The Fourth Circuit too has considered the "objective purpose and context of the communication."  *Olson v. Midland Funding, LLC*, 578 F. App'x 248, 251 (4th Cir. 2014) (internal quotations omitted) (holding that privacy notice was not in connection with collection of a debt).  *Olson* affirmed a district court holding that "offering … the opportunity to pay . . . is not a demand or inducement to pay."  *See Olson v. Midland Funding, LLC*, No. CIV. CCB-13-1882, 2013 WL 6717480, at *6 (D. Md. Dec. 18, 2013).

Here, a payoff statement to a borrower's attorney—prepared at the request of that attorney—was sent through the compliance department in response to a routine inquiry.  It was prepared by virtue of a lender's regulatory obligations to respond to such requests, rather than as part of a "strategy to make payment more likely."  Such a letter does not fall within the ambit of the FDCPA, and Plaintiff's FDCPA claims should be dismissed as a result.

II. **Even Assuming *Arguendo* That Compliance Department Correspondence In Response to a Debtor's Attorney's Request for Information Could Constitute "Collection," Plaintiff Does Not Allege Specific Facts That Would Entitle Him to Relief.**

Mr. Arndt claims that Fay violated the FDCPA based on (1) the fact that Ocwen adjusted or "waived" $4,060.22 in fees on the date the loan was service-transferred but Fay did not, and (2) the fact that the corporate advance fee listing shows "PROP INSP" fees, which he claims are prohibited under Maryland law.  Compl. ¶¶ 9, 11.

6

As to the $4,060.22 that appears on both Ocwen's and Fay's transaction records, all Mr. Arndt has pled is that *on the effective date* that Fay began servicing the loan, Ocwen made entries in its own systems to remove those fees. In other words, on the date Ocwen made the entries stating "expense waive," Ocwen was not actually servicing the loan. *See* Ex. D (Doc. 1-4). Mr. Arndt does not allege any facts to support his attorney's "reason to believe" that Ocwen actually waived the fees in connection with Mr. Arnd''s account, while it was still servicing that account.[6] Nor has he pled any facts indicating that any corporate advance fees included in that amount were not "authorized by the agreement creating the debt or permitted by law." *See* 15 U.S.C. § 1692f(1). He has pled nothing about the $4,060.22 sum, other than that it appeared in Fay's records as a corporate advance adjustment. This does not suffice to allege that the sum is deceptive, misleading, unfair, or unconscionable.

Mr. Arndt's allegations relating to a purported violation of Maryland Commercial Law § 12-121 fare no better. As an initial matter, that statute does not establish a private right of action. *See id.* Moreover, as this Court has held, violation of a state statute does not in and of itself constitute a FDCPA violation. *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 728-730 (D. Md. 2011). Here, Mr. Arndt has alleged no facts to suggest that Fay violated either the FDCPA or Maryland Commercial Law.

The Deed of Trust expressly allows the Lender to charge the borrower for "Lender's Expenditures," relating to actions taken to protect the Lender's interest, and allows the Lender to recover expenses in connection with enforcing its rights under the Deed of Trust following default (including surveyor's reports and appraisal fees). *See* Exhibit A hereto. Here, Mr. Arndt admits that the debt was in default, which would implicate both provisions under the Deed of

---

[6] Such an allegation is simply implausible: the inference to be drawn from the entries stating "expense waive" is that *after* Ocwen service-transferred the loan to Fay, it removed any fee balance on its own books.

Trust. Compl. ¶ 7. While Maryland Commercial Law § 12-121 generally prohibits "visual" inspection fees, it excepts those needed to ascertain completion of repairs, or those in connection with an appraisal.

Mr. Arndt's allegation that as to these inspection fees assumes, in speculative and conclusory fashion, that any inspection fee contravenes Maryland law. As set forward above, this is not the case. Mr. Arndt's only factual support for his allegation relies upon Ex. F's entries for "PROP INSP," which again does not establish that the fees were incurred for the *types* of inspections prohibited by Maryland law, or not otherwise authorized by the Deed of Trust. Accordingly, Arndt "has not set forth facts indicating a plausible claim that these amounts were not authorized or were wrongfully claimed such that §§ 1692e or 1692f would be implicated." *McElvy v. Nationstar Mortg., Inc.*, No. 2:13CV377, 2014 WL 12527832, at *2 (E.D. Va. Mar. 10, 2014), *aff'd sub nom., McElvy v. Nationstar Mortg. LLC*, 581 F. App'x 293 (4th Cir. 2014). As such, this Court should dismiss Mr. Arndt's claims under Maryland Commercial Law § 12-121—to the extent one is raised—along with his claims for violation of Sections 1692e and f of the FDCPA. *See Iqbal*, 556 U.S. at 678-79 (facts that show a "mere possibility of misconduct" or "that are merely consistent with a defendant's liability" do not state a claim for relief).

## **Conclusion**

For the foregoing reasons, Plaintiff's Complaint should be dismissed.

February 16, 2017

Respectfully submitted,

  /s/ **_Mary S. Diemer_**
Mary S. Diemer, Esquire, FBN 12328
NELSON, MULLINS, RILEY & SCARBOROUGH LLP
E-Mail: mary.diemer@nelsonmullins.com
101 Constitution Avenue, N.W., Suite 900
Washington, D.C. 20001
(202) 712-2800
Fax: (202) 712-2860
*Attorneys for Defendant Fay Servicing, LLC*